The next case called for oral argument is in re Marriage of Bradley. Thank you, your honor. May it please the court. For the audio record, my name is Curtis Blood and I represent Dr. Timothy Bradley. This is an appeal from a financial judgment following a marital dissolution. We ask first that the judgment be reversed and the cause remanded for reconsideration of the financial issues. But the conclusion of our brief, into which quite a bit of thought went, is 14 lines long. We're asking for several things. It was revised a couple of times. I won't read it now, but we asked for quite a bit of it. Limitation on the issues, there's 13 issues in this case, 10 in the appeal, 3 in the cross appeal. I have 15 minutes, that's 69 seconds of issue. I'm not going to do it that way. I'll only address a handful of related issues. Other than that, I'll rely on the briefs. We feel very good about the briefs and about the way the briefing went in this case. And I feel just as good about the issues I'm not going to talk about as the ones that I do, and I feel good about those. Of course, the pleasure of the court, if there's any way that I can talk about that would make it any easier to decide this case, you know that I'll go there. What I'd like to talk about to start with is the party's retirement accounts. This trial took place in the wake of the 2008 global financial setback. And the doctor's practice also had suffered a series of setbacks. And as a result, the financial issues in this case were as much about debt as they were about assets. And during the case, the parties lost the marital home to foreclosure. The circuit court found that the doctor's net income per month for child support purposes was just over $2,000. That's what the court found. The party's single biggest asset was their retirement accounts, which totaled just under half a million dollars. The way the circuit court split the accounts was that Mrs. Bradley got $211,000 more than Dr. Bradley got. It was a 72-28 split. And this argument has nothing to do with a claim of abuse of discretion. We're simply pointing out three mistakes of law that the circuit court made in arriving at that split. And our position is that any one of those three justifies, requires that this matter be reversed and the cause remanded for reconsideration of the financial issues. The way the circuit court split, the $211,000 split, was two steps. First, he said, it's $211,000 difference, but if you take into account the taxes, that's going to reduce that difference by $60,000 to $152,000. And in addition, the court is going to give Dr. Bradley his truck and his medical corporation, which are worth a total of $89,000. So you subtract that and the difference is really only about $63,500. Three mistakes occurred in taking those two steps. First, there's a simple math error. The circuit court found that the corporation was worth $25,000. The circuit court found that the doctor's truck was worth $24,000. The circuit court found that the corporation plus the truck was $89,000. It did just a $40,000 math error, plain and simple. That was the circuit court's first mistake. Second place the court went wrong. There was no evidence on which to base the finding that the corporation was worth anything other than zero. The only witness on the subject of the value of the medical corporation was a certified public accountant. And he was well familiar with the case, I mean with the financial case. He did the party's taxes when the parties filed jointly. He did the corporation's taxes, had done them for years. He testified that it would be tough to cover the corporate debt by selling the corporate assets. Tough to cover the corporate debt by selling the corporate assets. In other words, the value of the corporation was about zero. But there was no contrary evidence. The CPA's opinion was the only opinion on corporate value. It was the only opinion. Mrs. Bradley, in a brief, tries to disparage the accountant, so basically calls him a shill of the doctor, which frankly I don't think the evidence shows anyway. The circuit court certainly didn't comment on it. But whether you disparage it or not, if the only evidence is that it's tough to cover the debts with the assets, what else could be found? Was there evidence of what the assets of the corporation were? I mean, was that set out? And were the debts set out? There was some evidence of that, like what the property was. In other words, did the trial court know the debts of the corporation were a total of X? Yeah, and that, by the way, is about $66,000. And then did the trial court also know that the assets were chairs, equipment, desks, etc., etc., etc.? And did anybody place a value on those in their financial statements or anywhere? I wasn't able to come up with a number myself, but I think that one could. Okay. So there was evidence from which the court could have made a determination that there was a 25% value of the assets above the debts, or $25,000 difference between the assets and the debts. Is that right?  Well, that's giving the circuit court an awful lot of credit. I mean, the circuit court doesn't have to have an opinion from an accountant, does it, to make that determination if there's evidence about the amount of debts and the value of the assets. Well, my answer to that would be that it's traditionally how it's done. I mean, that's how we do it, isn't it? I mean, persons with an accounting background come in and give an opinion, and really the big hole in this case is that there's only one opinion. I mean, I guess that a circuit judge could throw a bunch of numbers together, but it's – I was a business major, and I don't think I could have done it. But beyond that, I don't think that's the way we do it. But I'm actually almost obscuring the issue here because there's something else to consider, which is that the circuit court believed that there was a positive value to the accounts receivable. And to have an answer to that, that's where his positive value incorporation came from, because he thought that the accounts receivable were worth something. The CPA specifically testified that the value of the accounts receivable was nominal. And he said this for basically two reasons. Number one, that they were all. And he said the rule was basically that when they get beyond a certain age, they're not worth anything. And the second part, which is pretty close to the first part, is how they got old, is that Mrs. Bradley had been the office manager, and according to the CPA, she had taken in money, collected money from patients who were on their behalf and hadn't marked it off against the accounts receivable. So the accounts receivable were unreliable. You couldn't look at it and say, well, Mrs. Smith got this service and she owes this money. You couldn't do that anymore because the accounts receivable hadn't been reduced as payments came in. And then, like I say, that's how the accounts receivable got old. And again, we come to the CPA's testimony that in his opinion, they were of nominal value. And the Circuit Court plainly did not agree with that. But there's no evidence on which the Circuit Court could find that the accounts receivable had anything other than a nominal value. We only had the one professional opinion. There was no evidence, counter evidence, on the value of these accounts receivable other than the fact that they existed. And so I continue to insist the accounts receivable were worthless. Practice was of zero value. I hope I've answered the Court's question. I put a lot of thought into that. Thank you. Thank you, Your Honor. But we've just found two places that the Circuit Court went wrong so far. And either one of those would maintain the suspicion. But the third place is, like I said, the Circuit Court took into account the tax effect. The tax effect on the retirement assets as you split them up. The Court found that the tax effect for the 28% tax bracket would reduce the difference by almost $60,000. But the Illinois rule is, and we found plenty of cases out there in our brief, is the Circuit Court cannot take the tax effect on the assets into account unless the judge orders sale. Or the judge finds, or the parties prove, that sale is necessary. None of which was done. We cited plenty of cases, including this Court's Alexander case. It's a 2006 case. It says that. And Justice Walts, you authored it. And Justice Goldenherz, you were on the panel. So we maintain just to go with Alexander, which, by the way, one of your law clerks apparently did a great job on it because you don't need to go any farther than the research that the Court did in the Alexander opinion. So in sum, the Circuit Court says that if you take the taxes into effect and if you take the doctor's corporation's truck into effect, that there's only a $63,000 difference in these awards and retirement accounts. And actually, if you take Ms. Thayer's retirement account, she got $211,000 more than he got his truck. And we ask that that's the first thing we'd like, is that it be reversed and amended for reconsideration of that. That should be enough. But we hope that this Court will also address attorney's fees and spousal maintenance, both of which were awarded to Mrs. Bradley. Now, the Circuit Court also ordered Dr. Bradley to pay child support. But without child support, without spousal maintenance, without attorney's fees, Dr. Bradley itemized over $5,000 in expenses a month before he even eats. Now, again, the Circuit Court found that Dr. Bradley's net monthly income for child support purposes was just over $2,000. And you can see where that came from. It came from his financial statement. It starts at page C315 of the record. And right behind that is his W-2. When you look at his W-2, you look at his net. And that's where this just over $2,000 came from. Well, he also has rent on his apartment, $1,000. He also has rent on the medical building, which is over $1,700. And right there he's in the red. Right there. He's underwater. This is all in the record. And yet, he's paying spousal maintenance. He's paying attorney's fees. The cases of the Illinois Appellate Court absolutely require that for a warrant of spousal maintenance, for a warrant of attorney's fees, that the party that's paying have the ability to pay, have the ability to pay. And we cited one good case, the Wisniewski case, on the maintenance issue, which poor Mr. Wisniewski was in better shape than we are. We cited five cases in our yellow brief involving attorney's fee awards reversed because of failure proof of ability to pay, because Mrs. Bradley was disputing the rule in her appellate's brief, so we hit that hard. And we'd ask that the court visit those issues, even if reversing and remanding on the retirement account issues, because that certainly would be hit again. Being that the court has not had a whole lot of questions, although it had some good ones, I don't have a lot to say on this. It's funny, 13 issues, and I haven't used all my time. What is the situation as far as the suit against Memorial? Where did that stand at the point that the circuit court made its ruling? Per the record, the suit had basically ground to a halt. This court had reversed the dismissal, and it had gone back to the circuit court in Belleville, and Dr. Bradley had been unable to fund his attorneys, and his attorneys had basically turned the case off. And that's what the record says, and that's the last information that I have. And I guess the court could take additional notice if it had been dismissed, but I wouldn't represent that I know that. I have no idea on that. But I'm only here to speak about the record, and that's anyway what the record says. Thank you, Tom. Thank you so much. May it please the court, Mr. Blood. My name is Robert Wells, and I've represented Christine Bradley since April 13, 2009. That representation has included a dissolution of marriage, multiple motions to compel, multiple motions for enforcement, a residential foreclosure, which was consolidated with a dissolution action, and a pending federal foreclosure of the commercial properties. This morning, I'm given 15 minutes, and I'll do my best to cover the 10 points that are raised by Timothy on appeal. Before I start with the argument I'm going to present this morning, I first need to note that the home was not lost to foreclosure. By reason of the action that was taken by Christine and myself, it was consolidated, and the parties were able to sell the home and recoup something from that sale. As far as the math error, I would point out to the court, and you'll find it in Appendix A in the Appellant's Brief, the court examined the exhibits. It wasn't just the testimony of the parties. It was the exhibits that gave rise to determination as to what was the value of the corporation. As was pointed out by Justice Stewart, the court took into account the exhibits which had the accounts receivable, adjustments to the accounts receivable, collectability of the accounts receivable, account balances, and depreciable assets. It considered the corporate tax return for 2006 to 2008 in reaching a determination as to the value of the business. It didn't just simply take one aspect of that. I'd also note that the accounts receivable, the accountant was encouraged by questions by myself to try to age those accounts receivable and didn't do so. What we have in this case and what's troubling is the suspension of accepted accounting principles by Nick Maduri by his rote adaption and exception of Timothy's representations and Timothy's internal records. When asked by Timothy if he prepared financial statements for him, Nick replied, we do not do that for you, R13. Neither Nick nor his staff did any data entry, R18112. Instead, Nick, quote, relied upon Tim to be honest and forthright, end of quote, R124. Nick admitted wrong data in, wrong data out, R116. Nick admitted he did not review the documentation that was personal from what was a business expense, R123. Nick admitted the depreciated value of the assets was not their fair market value, R132. The cost of those assets were $117,000, as noted in Plaintiff's Exhibit Number 21. Timothy had full control over those assets and all of that information, yet he chose not to present a detailed listing of the accounts receivable, a detailed aging of the accounts receivable. It would be unfair to punish Chris for his failure to do so. A party who fails to induce evidence within his control at trial waives the right to complain about the lack of evidence at a higher court, and that's found in Henry Marriages Smith, 448 Northeast 2nd, 545 at 550. Accounts receivable only comprise 20% is what the court took. The court discounted the accounts receivable by 80%, so it's not like the court ignored this. Also, a deficiency with the husband could as well filled in trial cannot be used as a sword on appeal to challenge the court's ruling, and that's found in Henry Marriages Sanofrello, which is 913 Northeast 2nd, 1017 at 1086. Timothy's efforts to use Nick to recite and reformat his data was properly recognized by the court and properly discounted by the trial court. It was not ignored. We feel the court had adequate basis in the record to make the determination as to that. The next issue raised by counsel is the issue concerning the tax issues. I point out tax consequences are to be considered under Section 503D of the Unified Marriage and Dissolution of Marriage Act under subsection 12. The issue involved is not like MP. It doesn't involve penalties. It's not like Hawkins. It doesn't involve speculative sale of real estate, and it's not like Perino, which involves a hypothetical sale of a business. In a sale of real estate, the owner can pass to his children a stepped-up basis through a 1031 exchange. In a hypothetical sale of a business, a seller can choose not to sell or can provide for some creative accounting method to provide a reduced tax impact. Such is not the case with a pre-tax retirement account. If you take the distributions, you pay the taxes. If you convert it to the raw higher rate, you pay the taxes. If you leave it to your estate, the estate has to take mandatory withdrawals and pays the taxes. You don't avoid the taxes. It's not a situation in which you have those issues. And the taxes aren't capital gains. They are ordinary income taxes, and therefore they're significant. A party can enjoy the benefits of real estate without selling it. A party can enjoy the benefits of a business without selling it. However, a taxpayer cannot enjoy the benefits of a pre-tax retirement account until they take it out. So you can't enjoy it. So the tax consequences, if in fact that is the current law, which I disagree with, because I think those cases are distinguished, it shouldn't be the law with reference to this particular aspect and the way in which the court applies this. Item 3, Timothy's appeal, is referencing the fact that he was ordered to pay an amount of child support that exceeded his ability based on the fact that he was ordered to pay the health insurance premiums. Well, in pages 26 through 29 of that police brief, we've explained why the actual support should have been higher, and we believe the court was wrong in setting it the way it did. The failure to make express findings to say the court was going to have to pay that amount of child support together with the health insurance is something that may be inappropriate for the court not to make a specific finding, but it's not automatically reversible error. In remarriage of minor, which is 181, ill second, 552, says it's not an automatic requirement of reversal. An individual who is unwilling to follow the mandate of the court may forfeit his right to challenge the issue on which noncompliance arises. And you find in remarriage of marks, 96, Illinois appellate, third, 360 at 362. In this case, he refuses. He has never paid a dime towards the health insurance premiums. Yet he comes before this court and complains about the fact that he hasn't. He's been ordered to pay something, and it's over the amount he should pay. I take it the problem here is, I mean, the statute defines net income as an amount after deduction of payment of health insurance. It doesn't. And is the record clear that the court did not deduct that payment in arriving at net income? Is it clear that the judge did not? I would have to be fair with the court and say that the court made the determination of net income, and when it did that, it did not deduct the amount that was there for a health insurance premium. I would simply suggest the court was fair. And we know that. Why and how do we know he didn't, the court didn't deduct that? Because the court apparently, from the record appears, adopted the defendant's financial statement to the dollar and therefore it be improved from the area. I think unfair for me to try to suggest otherwise. But I don't think that it's unfair for the court to have done so, considering the overall circumstances. I challenge counsel's comments concerning all the deductions by saying there's $5,000 in expenses that he has and therefore he has negative income concerning these things. That is not so. The court, when it made its determination as to what is net income, took into account that his business paid those other expenses, not he personally. His business paid those expenses. He didn't pay the real estate taxes after he got his $2,069. He didn't pay the other expenses after that time. Those were paid by his business beforehand. And I think it's unfair of this court to try to thrust upon this court the argument that he had negative income and therefore couldn't pay these things. Dr. Bradley found ability to pay everything he wanted to pay. When there was a need, he found an ability to pay. When he wanted to hire an attorney, he found an ability to hire an attorney with reference to those things. He acknowledged the average income for a person with his specialty and his qualification was ten times his income, and that's found in the record in Exhibit No. 4 and also in the record on page R101 and R299-300. However, Timothy does support the claim that he overpaid on page, on his brief, in which he cites the record of R777-779. That's a record that took place on February 15, ten months after the trial court rendered its judgment in the judgment of dissolution of marriage. How can a trial court be faulted for not considering evidence that wasn't before the time of the original ruling? So we suggest the court did make the appropriate ruling. As far as attorney's fees, the issue there is not only the circumstances as to the relative ability to pay, but the underlying circumstances as to how the attorney's fees were incurred. I suggest if the court were to look at the orders that were rendered on July 29, 2009, August 28, September 28, November 17, December 22, 2009, and January 18, 2010, it will find from those the court has a basis for Timothy's improper purpose and behavior, Timothy's unreasonable actions, Timothy's culpable misconduct, Timothy's failure to abide by temporary orders, his unilateral cancellation of mediation with reference to the custody issue, Timothy's use of finite resources for his own attorney's fees and using his business accounts for his personal expenses, which is in addition to what the court found his income to be. Timothy's liquidating assets to pay for his attorney's fees. That was in violation of the temporary restraining order of the court. The court, when it determined the amount of attorney's fees, determined that the amount of attorney's fees he wasn't going to specifically assess for specific behavior, but he was going to consider those overall in his determination as to what attorney's fees were to be paid. Timothy's attorney's fees, which were in excess of Christine's, were paid by him from various resources that he had available to himself. Next, it's argued that the trial court did not violate Timothy's constitutional rights by his not being able to bear arms in Illinois. The key point, Your Honors, is this. The limitation for the protection of the children in this case was he not have firearms in Illinois until the younger child entered college. Your Honor, that was reasonable in the circumstance. We went overboard in this case, as was acknowledged by Timothy two times to the record in R-426 and R-467, to keep out of the record things that were damaging to him relative to what might be a crime  The fact that we've gone overboard to protect the father of the children in this case is not an excuse for saying his constitutional rights are denied. He can have his firearms in any of the other 49 states. He can have his firearms absolutely after the younger child goes to college. I'm going to skip ahead because I just don't know what I'm going to get there with the time frames, and I apologize for going quickly, but there's one point which I have to be fair with you. I didn't realize until last night. As I read this, I said, you know, I'm spending my time and spending my money. I went through the entire record that was there with reference to this issue concerning the court denying a ruling on the basis of jurisdiction. I read it, the 80 pages all over again. And I have to admit, it goes back and forth and on and on and upward and on. But that's not the issue. The 10th issue in this case, Your Honor, is really controlled by the very plea that was the basis for the motion. The motion that was filed on February 18, 2011, says this. Respondents motion to reopen proofs or in the alternative to modify college expense responsibility. And here's the key. That motion says in paragraph 4, the judgment of dissolution of marriage provided in part that each party would be responsible for 50% of the children's college education costs and no specific accounts were to be set up for that purpose. Citing page 27 of the judgment of dissolution, paragraph G. Paragraph G of the judgment of dissolution of marriage provides only for reservation of jurisdiction. It doesn't provide for educational expenses. They're providing paragraph K. I commend you to read paragraph K because what does paragraph K say? Paragraph K says this court has not been asked to address that issue. It does not allocate educational expenses 50-50. It doesn't. And as a result of that, my client had to, on July 14, 2011, file a petition for educational expenses for that very purpose, a motion that's still languishing in the trial court because of the need for discovery, which we have to get from Dr. Bradley in that case. Educational expenses. So there isn't any alleged damage that could arise whether the court said it was jurisdictional or whether it said it was discretionary not to reopen the proofs. Now, going back, if I could have a few more minutes, I wanted to cover just a couple more points. With reference to the issue concerning a continuing duty provider with corporate returns, Your Honor, there's good evidence and basis for saying what should be done, and it would be acceptable in all cases in which I've seen it, in which the court tries to determine, that in this situation where some of the children are languishing under a diminished standard of living, that the right to that information is prompted. It's not a HIPAA violation. We don't want the patient records. We want financial information to make sure these children aren't harmed any more than they were already harmed. With issue of Christine having the rights concerning the insurance, reference to the Boussig case is misplaced. That case deals with a 503G trust. In the 503G trust, it's paramount that the payor's spouse retains a residual interest in the corpus. That isn't the case here. We have insurance. There is no way that Timothy ever gets the corpus back. There is no corpus for him to get back. Unfortunately, for the corpus to be formed, Timothy has to be gone. It's insurance. Who's going to be there to take care of these kids if insurance comes in because Timothy's not there to help support them? Christine, she's got to pay all their expenses. She's the one who has to step forward and pay those expenses and handle those things on a day-to-day basis. Let me ask you a question just to make sure I understand. In your cross-appeal, you have not appealed the setting of child support. That is correct. And the reason why it was not addressed in that was because, in fact, child support is a fluid matter in which the tax returns were ordered to be provided to us. And just like it would be in the situation with reference to educational expenses, it's not going to be a permanent issue with reference to that. Do I think child support should be more? Absolutely, I do. But I also want to pick my best three issues. And the big issues in that, which I really wasn't going to touch on in oral argument, was the issue that we were denied temporary relief, we didn't get temporary support, and the trial court felt for some reason it wasn't able to provide us that relief. The fact that the court did not hold the corporation, which Dr. Bradley controlled, responsible with reference to an order for withholding that we provided to them. That order for withholding has the corporation treating us with the same disrespect we get treated by Dr. Bradley. I'm not going to pay you a dime of maintenance, and I'm not going to pay you a dime with reference to any of the health care expenses or the health insurance. I'm not going to do it. It's not what I want to do, and it's not what I'm going to do. As far as the ability to pay those expenses, I think the evidence that we've given you that really justify an increased amount of support also justifies the ability to pay all the expenses that are here. As I mentioned before, he had not only Mr. Corky, he had Mr. Brockman. He's had Mr. Horner. He now has Mr. Blood. Before Mr. Blood, he had Mr. Thompson with reference to his attorneys when he wishes to proceed in this case. So we suggest to the court that the ability for him to meet those needs is within his ability and, quite frankly, within his discretion. He's the one who uses his discretion to determine I'm going to go on a trip. He's the one who uses his discretion to determine that I'm going to pay this expense rather than another expense. Who's the one who suffers the consequences? My client. In my brief, I noted that when asked a question by me as to whether or not my client could have gotten back and forth to work, to go to Barnes-Stewart Hospital, if she hadn't brought car with the money that came from the child's account, she said no. Here she is, a health care professional who has a good income and it's been disputed. Dr. Bradley filed a motion in the trial court that said she should be held accountable because she doesn't take a better job. But here she is working, making money, providing the majority of the expenses with reference to these children, despite the fact that her husband's a plastic surgeon and despite the fact that the record shows that Dr. Bradley testified that he doesn't have to be on staff anywhere on a permanent basis. It's only he has to have temporary privileges which give him the right to sit in that matter. That's entirely within Dr. Bradley's control. To the best of my knowledge, I have not heard there's been any action taken with reference to that affirmative action. Nothing's been related to me concerning that. Thank you. Thank you, counsel. Appreciate your time and attention. Counsel? Thank you, your honor. May it please the court. Well, I only have five minutes and that's really not enough to make 15 minutes of arguments that I didn't read in the briefs, that you've never heard before. We heard it. Justice Stewart, you caught it. That's a new argument on child support. We heard a bunch of new arguments. We heard a bunch of new authorities. No, I was just asking because I was going to ask you, you know, to explain why the doctor's only earning 10% of what the average doctor in his position earns. Yeah, and then we do cover that in the briefs. But it's not an issue on appeal, really, whether the child, at least from the wife's standpoint. She's not appealing that the child support's too low. Not even raising it, yes. And there's certainly a basis for it. I mean, it would be a tough road to go. It wasn't just new arguments that we just heard. It was stuff we've not briefed. I mean, we've never had a shot at it. We've only got five minutes now. Less than that. New authorities. I heard one reference to San Othello. I looked real quickly through the tables of contents of the briefs. That's a new authority. I've never heard of that one before. That's on the tape. I mean, you really need to hear it. You really need copies of that tape because, well, you should get an alignment. Because what you heard on that and that appellee's argument just now, you're not going to get out of the briefs. That's brand new stuff we haven't had a shot at. All right. The circuit court heard the evidence of Dr. Bradley's inability to pay court-ordered expenses, heard the evidence of the corporation's financial straits, and did not find that either of them willfully failed to pay any. And at the end of the day, that's what it's about, isn't it? The circuit court heard that evidence. Christine's case in the circuit court, as it is here, is argument, argument, argument, argument. Where's the facts? There was an accountant. He testified. Well, if you can throw all the mud on him, you won. But he's the only financial person to testify. He's the only one. Christine's appeal and Christine's trial court case were just argument. And the circuit judge said, Christine makes a convincing argument on the value of the corporation. Use the words convincing argument. But that's just it. It was argument. It wasn't facts. That's the problem with that appellee's case. And I can't even touch half of these issues in the minute and a half or so I've got left. And, really, I'm not going to try. But I would ask this court to consider what it just heard in light of the briefs. And I'd ask this court to consider whether we've had a fair shot at that or whether this is stuff that was weighed for failure to include in the briefs. And I think you'll find it's the latter. This isn't the way that you cite law. This isn't the way you cite facts. And this is not the way you comply with the rules of appellate procedure in the state. It's not the way to run a case in front of this court. We rely completely on the briefs, which we think are more than adequate in this case to narrow the issues. And we're very happy with our positions on all ten of the issues, on all three of the cross-appeal issues, Your Honor. And we think that if this court sticks to the briefs and ignores the sandbagging that occurred in this room, that you'll reach a just decision, a correct decision. Thank you, Your Honor. Thank you, Counsel. We appreciate the briefs and arguments of both counsels. We'll take the case under advice before repeating a short recess, and then we'll receive more arguments in court.